UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SHARDONA WOODS JONES, o/b/o J.L.J.,

                Plaintiff,

v.                                                                                        1:19-CV-0582
                                                                                          (WBC)
COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

APPEARANCES:                                              OF COUNSEL:

LAW OFFICES OF KENNETH HILLER, PLLC        ELIZABETH HAUNGS, ESQ.
  Counsel for Plaintiff                                 KENNETH HILLER, ESQ.
6000 North Bailey Ave, Ste. 1A
Amherst, NY 14226

U.S. SOCIAL SECURITY ADMIN.                       DANIELLA CALENZO, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II   LAURA BOLTZ, ESQ.
  Counsel for Defendant                              RICHARD PRUETT, ESQ.
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

The parties consented, in accordance with a Standing Order, to proceed before the undersigned. (Dkt. No. 18.) The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons discussed below, Plaintiff's motion is denied, and the Commissioner's motion is granted.

**I.      RELEVANT BACKGROUND**

### A. Factual Background

Claimant was born in 2002 and was an adolescent at the time of filing and at the time of the hearing. (T. 58); 20 C.F.R. § 416.926a(g)(2). Claimant's alleged disability consists of attention deficit hyperactivity disorder ("ADHD"), oppositional defiance disorder ("ODD"), and anxiety disorder. (T. 59.)

### B. Procedural History

On September 14, 2015, Plaintiff applied for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act on Claimant's behalf. (T. 58.) Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On May 17, 2018, Plaintiff and Claimant appeared before the ALJ, Theodore Kim. (T. 35-57.) On July 3, 2018, ALJ Kim issued a written decision finding Claimant not disabled under the Social Security Act. (T. 7-29.) On March 5, 2019, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-6.) Thereafter, Plaintiff timely sought judicial review in this Court.

### C. The ALJ's Decision

Generally, in his decision, the ALJ made the following findings of fact and conclusions of law. First, the ALJ found Claimant was a "adolescent" at the time of filing and hearing pursuant to 20 C.F.R. § 416.926a(g)(2). (T. 13.) Second, the ALJ found Claimant had not engaged in substantial gainful activity since the application date. (*Id.*) Third, the ALJ found Claimant suffered from the severe impairment of ADHD. (*Id.*) Fourth, the ALJ found Claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix I ("the Listings"). (T. 14.) Fifth, the ALJ found Claimant

did not have an impairment or combination of impairments that functionally equaled an impairment set forth in the Listings.  (T. 15-26.)  Sixth, and finally, the ALJ concluded Claimant had not been disabled, as defined by the Social Security Act, since September 14, 2015, the date her application was filed.  (T. 30.)

## II.   THE PARTIES' BRIEFINGS

### A.   Plaintiff's Arguments

Generally, in support of her motion for judgment on the pleadings, Plaintiff makes two arguments.  First, Plaintiff argues the ALJ failed to properly develop the record.  (Dkt. No. 9 at 6-13.)  Second, and lastly, Plaintiff argues the ALJ failed to apply the correct legal standard concerning Claimant's progress due to her special education program.  (*Id*. at 10-13.)  Plaintiff filed a reply in which she reiterated her original arguments.  (Dkt. No. 17.)

### B.   Defendant's Argument

Generally, in support of his cross-motion for judgment on the pleadings, Defendant makes one argument.  Defendant argues substantial evidence supported the ALJ's determination Claimant had less than marked limitation in the domain of acquiring and using information.  (Dkt. No. 16 at 12-21.)

## III.  RELEVANT LEGAL STANDARD

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs*., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*,

817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner],

even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

An individual under the age of eighteen is considered disabled within the meaning of the Act "if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). The Commissioner has set forth a three-step process to determine whether a child is disabled as defined under the Act. *See* 20 C.F.R. § 416.924.

At step one, the ALJ determines whether the child is engaged in substantial gainful work activity. 20 C.F.R. § 416.924(b). If so, the child is not disabled. *Id.* If not, the ALJ proceeds to step two and determines whether the child has a medically determinable impairment(s) that is "severe." *Id.* § 416.924(c). If the child does not have a severe impairment(s), he or she is not disabled. *Id.* If the child does have a severe impairment(s), the ALJ continues to step three and examines whether the child's impairment(s) meets, medically equals, or functionally equals the listed impairments in Appendix 1 to Subpart P of Part 404 of the Commissioner's regulations (the "Listings"). *Id.* § 416.924(d). In determining whether an impairment(s) functionally equals the Listings, the ALJ must assess the child's functioning in six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for him or herself; and (6) health and physical well-being. *Id.* § 416.926a(b)(1)(i)-(vi). To functionally equal the Listings, the child's impairment(s) must result in "marked" limitations in two domains or

an "extreme" limitation in one domain.  *Id*. § 416.926a(a).  A child has a "marked" limitation when his or her impairment(s) "interferes seriously" with his or her ability to independently initiate, sustain, or complete activities.  *Id*. § 416.926a(e)(2).  A child has an "extreme" limitation when his or her impairment(s) "interferes very seriously" with his or her ability to independently initiate, sustain, or complete activities.  *Id*. § 416.926a(e)(3).

If the child has an impairment(s) that meets, medically equals, or functionally equals the Listings, and the impairment(s) meets the Act's duration requirement, the ALJ will find the child disabled.  20 C.F.R. § 416.924(d).

## IV.   ANALYSIS

### A.   Duty to Develop for Additional Testing

Plaintiff argues the ALJ failed in his duty to develop the record because he failed to order additional consultative examinations for cognitive and speech/language testing.  (Dkt. No. 9 at 6-10.)  Plaintiff argues the record is "replete with references" to Claimant's learning disorder; however, the extent of the disorder is not clear from the record and therefore additional testing was required.  (*Id*. at 6-7.)  Plaintiff argues the ALJ should have ordered additional speech/language testing to "better understand [Claimant's] severe speech and language deficits."  (*Id*. at 8-10.)  Here, the record before the ALJ was sufficient for him to make a determination and therefore the ALJ was not obligated to order additional testing.

In general, an "ALJ has an obligation to develop the record in ... benefits proceedings, regardless of whether the claimant is represented by counsel."  *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000).  But "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical

history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999); *see Janes v. Berryhill*, 710 F. App'x 33 (2d Cir. 2018) (ALJ not required to develop the record any further where the evidence already presented is adequate for the ALJ to make a determination); *see also Morris v. Berryhill*, 721 F. App'x 25, 27 (2d Cir. 2018) (duty to develop record by recontacting source only arises if the ALJ lacks sufficient evidence in the record to evaluate the source's findings).

An ALJ is not required to further develop the record to obtain additional testing where the record already contains sufficient information, such as formal assessments, testing, and evidence of claimant's functioning with consideration for cognitive limitations. *Hyshaw v. Comm'r of Soc. Sec.*, 797 F. App'x 671, 672 (2d Cir. 2020). Regarding Claimant's learning disability, the record before the ALJ contained sufficient information for a determination.

Although the ALJ determined Claimant's learning disability was not a medically determinable impairment, the ALJ considered evidence pertaining to her intellectual and cognitive abilities at all steps of the sequential process.  (T. 14.)  As outlined herein, the ALJ considered evidence in the record such as intellectual and cognitive testing, objective medical observations, educational records, and testimony.

Here, the record contains a single notation of a diagnosis of learning disability in 2016.  (T. 403-404.)  The "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is not, itself, sufficient to deem a condition severe. *McConnell v. Astrue,* 2008 WL 833968, at *2 (N.D.N.Y.2008) (citing *Coleman v. Shalala,* 895 F.Supp. 50, 53 (S.D.N.Y.1995)).  No

7

other treatment notation from Claimant's treating provider contained the diagnosis of learning disability; however, Claimant had an ongoing diagnosis of ADHD. (T. 306, 308, 310, 417, 420, 427, 430.) Although the ALJ determined Claimant's learning disability was not a medically determinable impairment, the ALJ nonetheless "considered that diagnosis in the context of the claimant's ADHD." (T. 14.) Therefore, any error in determining Claimant's learning disability was not a medically determinable impairment, and therefore non-severe, would be harmless. *Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (finding the alleged step two error harmless because the ALJ considered the plaintiff's impairments during subsequent steps).

The record contained Claimant's Individualized Education Plan ("EIP") reports for October 2016, at the start of 9th grade, and October 2017, at the start of 10th grade. (T. 205-217, 434-459.) The ALJ discussed Claimant's IEPs in his decision and relevant domains, and specifically addressed the testing results contained in the reports. (T. 17-18, 20, 22, 23.) To be sure, both IEPs listed Claimant's classification as "learning disability." (T. 205, 434.) Claimant was in a regular education classroom with additional support such as integrated co-teaching. (T. 441.) Claimant also required checks for understanding, a calculator for math, a graphic organizer for writing assignments, and an editing and revision checklist. (T. 4404-441.) Lastly, the IEPs contained numerous testing results including an October 2016 Woodcock Johnson test and Kaufman Brief Intelligence test results. (T. 206-207.)

The record also contained a consultative examination and a review by a non-examining State agency medical consultant. On October 27, 2015, Gina Zali, Psy.D., examined Claimant and provided a medical source statement. (T. 297-301.) Under the

heading "cognitive functioning," Dr. Zali noted Claimant's intellectual functioning was estimated as average and her general fund of information was age appropriate. (T. 299.) Dr. Zali listed Claimant's diagnosis at ADHD and noted no other reported diagnosis. (T. 300.) Dr. Zali opined Claimant had:

> no limitations with attending to, following, and understanding age-appropriate directions, completing age appropriate tasks, adequately maintaining appropriate social behavior, responding appropriately to changes in the environment, learning in accordance to cognitive functioning, asking questions and requesting assistance, being aware of danger and taking needed precautions, interacting adequately with peers, and interacting adequate[ly] with adults.

(*Id*.) The ALJ ultimately concluded Claimant had greater limitations than provided by Dr. Zali, specifically in the domains of acquiring and using information; attending and completing tasks; interacting and relating with others; and caring for self. (T. 19.)

Non-examining State agency medical examiner, M. Marks, reviewed the record on December 8, 2015. (T. 65.) Dr. Marks concluded Dr. Zali's opinion suggested non-severe impairments. (T. 62.) Ultimately, Dr. Marks opined Claimant's ADHD was non-severe. (*Id*.) The ALJ determined the record as a whole supported greater limitations than provided by Dr. Marks. (T. 19.)

In addition to the evidence in the record, Plaintiff was represented by counsel at all stages of Claimant's application. (*See* T. 58.) Neither Plaintiff nor her counsel allege disability due to a learning disability outside of context of Claimant's diagnosis of ADHD, ODD, and anxiety. (T. 58, 227-231.) At no point did counsel request additional testing. *See Bushey v. Colvin*, 607 F. App'x 114, 115 (2d Cir. 2015) (ALJ's obligation to develop record is lessened where plaintiff is represented by counsel "who makes insufficient

efforts" to complete the record and nothing in the record would indicate addition records were missing or necessary).

Overall, the record contained sufficient information concerning Claimant's learning disability for the ALJ to make his determination.  Although the ALJ determined her learning disability was not a medically determinable impairment, the ALJ nonetheless discussed evidence concerning her cognitive and intellectual impairments at all steps of the sequential process.  The ALJ specifically considered testing results, IEPs, medical treatment notations, and consultative examinations.  Therefore, the ALJ was not required to further develop the record by obtaining additional cognitive testing.

The record also contained sufficient information regarding Claimant's speech/language impairments.  As summarized in Claimant's IEP, she underwent Clinical Evaluation of Language Fundamental ("CELF-IV") testing in October of 2013 approximately two years before her application and a year prior to her alleged onset date.  (T. 449.)  Notations in the IEP stated, in February 2014, Claimant achieved the speech/language goals related to vocabulary skills, memory, and following directions.  (T. 448.)  Claimant made "maximum progress," her goals were met, and speech therapy was no longer necessary "to support academic success."  (*Id*.)  Plaintiff agreed with the recommendation to terminate speech services.  (*Id*.)  Therefore, Claimant's speech/language testing, services, and goals were completed prior to her application and onset dates.

As outlined above, the record also contained consultative reports which the ALJ relied on in assessing Claimant's speech/language abilities.  Dr. Zali observed Claimant had "some mild articulation problems" but her "overall intelligibility was good."  (T. 299.)

Dr. Zali further observed Claimant's expressive and receptive language skills were age appropriate. (*Id*.)

In addition, contrary to Plaintiff's assertion, the ALJ did not misuse the CELF testing results in the record. (Dkt. No. 9 at 9.) Plaintiff asserts "if the ALJ wanted to use [CELF scores and cessation of services] for or against [Claimant's] language deficits, he needed to actually secure the full record of this treatment." (Dkt. No. 9 at 9-10.) Plaintiff provides no authority to support her assertion. Indeed, summaries may be sufficient, especially when read in the context of the treatment record. *See Blackman v. Berryhill*, No. 1:16-CV-00869, 2018 WL 3372963, at *4 (W.D.N.Y. July 11, 2018) (ALJ did not fail in his duty to develop the record where treatment summaries provided a comprehensive overview of plaintiff's mental health progress over the course of his treatment).

The ALJ specifically noted Claimant's CELF score in the domain of acquiring and using information. (T. 20.) Overall, the ALJ's decision, that Claimant has less than marked limitation in the domain of acquiring and using information was proper and supported by substantial evidence. In making his determination in this domain, the ALJ relied on Dr. Zali's examination and opinion. (T. 20.) The ALJ also considered various testing scores, including Claimant's CELF score and intelligence testing, and report cards. (*Id*.) The ALJ also relied on information contained in Claimant's IEP. (*Id*.) Therefore, the ALJ did not misuse the CELF testing scores as a factor in his evaluation of Claimant's ability in the domain of acquiring and using information.

Overall, the ALJ was not required to obtain additional information concerning Claimant's CELF testing and speech/language abilities. The record contained CELF testing from 2013, notations indicating Claimant's speech/language goals were

11

achieved and services were no longer needed prior to her onset date, and medical source observations that Claimant's speech/language skills were age appropriate.

Therefore, the ALJ did not fail to develop the record because the record was sufficient for the ALJ to make a determination. Although Plaintiff argues additional cognitive testing and language/speech testing was required, the record contained testing results, IEPs, medical treatment records, a consultative examination, and hearing testimony. In addition, Plaintiff was represented by counsel at all stages of her application process and at no time did Plaintiff or counsel request additional testing.

### B.     Structured Setting

Plaintiff argues the ALJ failed to apply the correct legal standard concerning Claimant's special education program. (Dkt. No. 9 at 10-13.) Plaintiff argues the ALJ based his findings on Claimant's good grades and progress in school, but "at no point did he discuss the fact that this progress was in special education, or explain how her progress compared to the average student her age." (*Id*.)

The regulations require ALJs to consider the effect of a "structured or supportive setting" on a claimant. 20 C.F.R. § 416.924a(iv)(C). Such settings "may minimize signs and symptoms of" claimant's "impairment(s) and help to improve [claimant's] functioning ... but [a claimant's] signs, symptoms, and functional limitations may worsen outside this type of setting." *Id.* The regulations require consideration of a claimant's "need for a structured setting and the degree of limitation in functioning [claimant] may have or would have outside the structured setting." *Id.* Therefore, even when a claimant can function well inside such a structured setting, the regulations require consideration of "how [a claimant] function[s] in other settings and whether [claimant] would continue to

function at an adequate level without the structured or supportive setting." *Id.* While the ALJ must consider a structured or supportive setting, the regulations do not direct the ALJ to explicitly discuss these factors in the decision. *St. Louis ex rel. D.H. v. Comm'r of Soc. Sec.*, 28 F. Supp. 3d 142, 152 (N.D.N.Y. 2014) (citing *Watson ex rel. K.L.W. v. Astrue,* No. 07-CV-6417, 2008 WL 3200240, at *4-5 (W.D.N.Y. Aug. 5, 2008)).

Although Plaintiff asserts the ALJ failed to follow the correct legal standard in assessing her "special education with significant supports," Plaintiff essentially argues evidence in the record supports her assertion of greater limitations. (Dkt. No. 9 at 11); *see Pellam v. Astrue*, 508 F. App'x 87, 91 (2d Cir. 2013) ("We think that Pellam is, in reality, attempting to characterize her claim that the ALJ's determination was not supported by substantial evidence as a legal argument in order to garner a more favorable standard of review.").

Here, the ALJ followed the correct legal standard in assessing Claimant's educational setting because the ALJ considered Claimant's IEPs, Dr. Zali's examination and opinion, medical records, and testimony. *See St. Louis ex rel. D.H.,* 28 F. Supp. 3d at 152 (Court found no basis for conclusion ALJ failed to consider structured educational environment where ALJ recounted consultative examiner's report, need for support in school, status as a special education student, and teacher evaluations).

In each domain the ALJ outlined the legal standard that requires him to compare Claimant's abilities to a same aged child without impairment. (T. 19, 21-25.) In his discussion of the evidence, the ALJ summarized Claimant's IEP, noting that overall Claimant showed progress in school and her behavior was not a concern. (T. 17.) The ALJ noted the specific accommodations Claimant received, such her use of an agenda

to write assignments.  (T. 21.)  Indeed, Claimant was placed in a general education setting with consultant teacher services.  (T. 434.)  Due to her educational needs, Claimant required checks for understanding, a calculator for completing computation work, graphic organizers for writing assignments, and an editing and revision checklist.  (T. 440-441.)

The ALJ also acknowledged Claimant's activities and abilities outside of school.  For example, the ALJ noted Claimant's involvement in summer camps and the track team.  (T. 16, 23.)  The ALJ considered Dr. Zali's examination during which Plaintiff reported Claimant was independent for some household chores and personal care.  (T. 21.)  Therefore, the ALJ applied the correct legal standard in assessing Claimant's structured setting.

For the reasons stated herein, the ALJ applied the correct legal standards and his determination was supported by substantial evidence in the record.  Therefore, the ALJ's determination is upheld.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 16) is **GRANTED**; and it is further

**ORDERED** that Defendant's unfavorable determination is **AFFIRMED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated:     May 13, 2020

*Bill Carter*
William B. Mitchell Carter
U.S. Magistrate Judge